861 A.2d 876

### In re BUCKS COUNTY INVESTIGATING GRAND JURY

**Application of Ronald P. Power and Richard A. Sprague on Behalf of Himself and Sprague & Sprague.**

**No. 172 MM 2004.**

Supreme Court of Pennsylvania.

Oct. 25, 2004.

## ORDER

PER CURIAM.

**AND NOW,** this 25th day of October, 2004, it is hereby ordered that the Emergency Application for Review is granted. As the Commonwealth has failed to meet its burden of proof under *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975), the order of the Supervising Judge of the Bucks County Investigating Grand Jury disqualifying counsel is reversed. The Emergency Application for Stay is dismissed as moot.

Justice CASTILLE files a dissenting statement joined by Justice EAKIN.

Justice CASTILLE dissenting.

Although I agree that the application for review in this case should be granted, I respectfully disagree with the Court's disposition on the merits. The Court, by *per curiam* order, summarily reverses the order of the Supervising Judge of the Bucks County Investigating Grand Jury disqualifying counsel. I write to explain my disagreement, since the Court's unexplained reversal provides no guidance to the court below.

Petitioners seek an Emergency Stay and Emergency Review of the order of the trial court, which disqualified counsel Richard A. Sprague, Esq., Mark B. Sheppard, Esq., and the law firm of Sprague & Sprague ("Counsel") from representing Ronald P. Power in the ongoing proceedings before the Bucks County Investigating Grand Jury. Petitioners bring their Emergency Applications pursuant to 42 Pa.C.S. § 722(5) and Pa. R.A.P. 3331(a), which give this Court exclusive jurisdiction to review matters relating to the convening, supervision, administration, operation or discharge of an investigating grand jury or which otherwise directly affect such a grand jury or any investigation conducted by it.

On June 17, 2004, Counsel entered their appearance "on behalf of Voicenet Communications, Inc., Omni Telecom, Inc. and their officers, directors and employees, including specifically, Brian Adelson" before the investigating grand jury. Respondent, the District Attorney of Bucks County ("District Attorney"), originally moved to disqualify Counsel from representing Mr. Power on June 30, 2004 and filed a supporting brief with the Honorable Kenneth G. Biehn, Supervising Judge of the Grand Jury, on July 21, 2004. The District Attorney argued that not only was there great potential for conflicts of interest, but that the integrity and effective functioning of the grand jury could be compromised by multiple representation by a single law firm. The Supervising Judge took the matter under advisement, wisely preferring to delay a determination until it became clear whether developments in the case would necessitate the disqualification of Counsel. On September 16, 2004, the date Mr. Power was scheduled to

testify before the grand jury, an extensive hearing was held to discuss the disqualification motion.[1]

At the September 16, 2004 hearing, the District Attorney argued to disqualify counsel on conflict of interest grounds arising from the fact that counsel also represents Brian Adelson, another principal of Voicenet whose challenge to the grand jury proceedings initiated this Court's involvement in reviewing the proceedings of this grand jury. N.T. 09/16/04, at 16.[2] In the District Attorney's opinion, given the nature of the investigation, Counsel could not adequately represent Mr. Power's interests because this particular investigation requires secrecy and Counsel could not adequately inform his client of how best to proceed when Counsel has information from the testimony of another client, which he cannot share with this client. The District Attorney questioned how Counsel could separate what they know about one witness's testimony from another's. Furthermore, the District Attorney stated that, should one witness choose to cooperate with the investigation and testify against the other witnesses, all of whom are represented by the same counsel, a clear and definite conflict of interest would arise. At the hearing, the Supervising Judge commented that a conflict is further apparent because Counsel is also representing the corporation, and the corporation is paying the attorney fees for all employees, including Mr. Power. *Id.* at 16–19. The Supervising Judge noted that if Mr. Power were sworn to secrecy, counsel would have significant difficulty providing legal advice to Mr. Adelson if some of Mr. Power's testimony is conflicting.

Counsel responded that there was no conflict because all of their clients are willing to cooperate by answering all questions and asserting that none of them have any incriminating information to offer nor do they intend to invoke any privilege.

1. Mr. Power's appearance before the grand jury was continued to September 30, 2004 and then again to October 7, 2004. This Court has not been apprised whether or not Mr. Power has yet in fact appeared before the grand jury.

2. On September 17, 2004, this Court entered a *per curiam* order, granting review in Adelson's appeal, and affirming the order of the Supervising Judge. Messrs. Justice Nigro, Saylor, and Baer dissented.

*Id.* at 22. Counsel further stated that disqualification would jeopardize Mr. Power's right to counsel of his choice. Counsel then called Mr. Power, who testified that it was his choice to retain current counsel, even though his employer is paying the attorney fees, and that even if he had to pay his own fees, he would maintain current counsel. *Id.* at 25, 28, 32–33. On cross-examination, Mr. Power admitted that he did not independently choose his counsel, but learned of Counsel through his employer. Co-counsel Mark B. Sheppard testified that, in his opinion, after interviewing both Mr. Power and Mr. Adelson, their testimony is not conflicting. *Id.* at 35–36, 43.

The Supervising Judge granted the disqualification motion at the conclusion of the hearing and also denied an oral request for a stay. On September 21, 2004, the disqualification order was reduced to writing. In an October 4, 2004 opinion supporting the order, the Supervising Judge stated that in this instance, the accumulation of evidence added up to a real likelihood of conflict of interest, and that mere separate representation of upper-level employees by present Counsel and lower-level Voicenet employees by other counsel, as proposed by Counsel, would not obviate that conflict. Furthermore, the Supervising Judge found that the potential for compromising the integrity of the grand jury was significant; that the grand jury cannot effectively function if counsel is privy to the testimony of multiple witnesses; and that the potential for conflict was heightened by the fact that all counsel fees are being paid by one entity, thereby giving rise to divided loyalty by present Counsel. *See Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). The Supervising Judge concluded, therefore, that there were unavoidable problems with permitting Counsel to represent Mr. Power.

In addition to the arguments made during the September 16, 2004 hearing, petitioners now argue in their Application for Review that the Supervising Judge applied an improper legal standard by disqualifying Counsel because of a "potential" rather than an actual conflict. They further argue that Counsel's right to practice their profession is being violated. Petitioners also argue that there is no *per se* prohibition of

multiple representation before an investigating grand jury, and that a secrecy order provides no basis for a disqualification.

In response, the District Attorney argues that the Supervising Judge utilized the proper standard in disqualifying Counsel, and points to the fact that there is no constitutional right to counsel for witnesses testifying before the grand jury, under either the U.S. or Pennsylvania Constitutions. Rather, this right is a legislative creation, specifically 42 Pa.C.S. § 4549(c)(1), as limited by § 4549(c)(4). The District Attorney also specifically notes that it need not prove an actual, currently existing conflict, but only a likelihood for future conflict.

Pursuant to Section 4549, the Supervising Judge has broad discretion to determine if a conflict of interest requires disqualification:

An attorney, or attorneys who are associated in practice, shall not continue multiple representation of clients in a Grand Jury proceeding if the exercise of the independent professional judgment of an attorney on behalf of one of the clients **will or is likely to be adversely affected by his representation of another client. If the supervising judge determines that the interest of an individual will or is likely to be adversely affected, he may order separate representation of witnesses,** giving appropriate weight to the right of an individual to counsel of his own choosing.

42 Pa.C.S. § 4549(c)(4) (emphasis added). If the witness or defendant can financially afford it, he is generally entitled to the counsel of his choosing. *Id.* § 4549(c) (witnesses subpoenaed to appear before investigating grand jury have right to counsel). However, the right to counsel of one's choosing and the right of an attorney to practice his profession are not absolute, but can be impaired or eliminated by state regulation which is designed to provide for overriding state interests or individual constitutional guarantees. *In re Investigating Grand Jury of Philadelphia County,* 527 Pa. 432, 593 A.2d 402, 410 (1991); *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896, 905 (1975); *Shade v. Great Lakes Dredge & Dock Co.,* 72

F.Supp.2d 518 (E.D.Pa.1999). These individual interests must be weighed against competing state interests, including, in a grand jury setting, the need to have an unimpeded and properly functioning grand jury. *In re Philadelphia County Investigating Grand Jury XII,* 529 Pa. 471, 605 A.2d 318 (1992).

This Court has stated that in balancing the conflicting rights of the witnesses to counsel of their own choosing, of the attorneys to pursue the practice of law, and of the Commonwealth to insure that the grand jury's function is not unduly impaired, four considerations dominate the weighing process:

> (1) Whether the state interest(s) sought to be achieved can be effectively accomplished in some manner which will not infringe upon interests protected by constitutional rights; (2) Whether the state interest(s)(are) sufficiently compelling when compared with the interests affected, (to justify) any infringement of those interests; (3) Whether the state interest(s)(are) sufficiently compelling to justify the degree of infringement that is necessary to effectuate that interest; (4) Whether the provision under challenge represents the narrowest possible infringement consistent with effectuating the state interest involved.

*Pirillo,* 341 A.2d at 905; *see also Philadelphia County Investigating Grand Jury,* 605 A.2d at 319; *Investigating Grand Jury of Philadelphia,* 593 A.2d at 409. Although multiple representation is not *per se* prohibited, *Pirillo,* 341 A.2d at 903, the existence of multiple representation jeopardizes the statutorily defined concept of grand jury secrecy, which is designed to protect the Commonwealth, the grand jurors, and the reputation of the witnesses appearing before the grand jury. *Investigating Grand Jury of Philadelphia,* 593 A.2d at 409. Those with experience in such matters know that secrecy is one of the grand jury's most powerful tools. It helps prevent the subornation of perjury, encourages free and untrammeled disclosure by persons who have information about crimes, and protects the reputation of witnesses. The Supervising Judge is the guardian and primary arbiter of secrecy, and is charged with the responsibility to curtail any abridge-

ment of the grand jury's function to investigate public wrongs. *Id.* at 409. As this Court has stated:

> If one witness reveals his testimony to his attorney, as he has every right to do, certainly the attorney will feel obliged, perhaps even subconsciously, to reveal to his other clients the testimony of the first witness. With the attorney in such a position, either the attorney-client relationship or the grand jury secrecy must suffer.

*Id.* The test for determining whether there is an impairing conflict is mere probability, not certainty. *Pirillo,* 341 A.2d at 905. A court is not required to wait until a probability ripens into a certainty to disqualify counsel. *Id.*

The settled test for an abuse of discretion is not whether the reviewing court would have decided the question differently if it were in the shoes of the trial judge. "Discretion is abused when the course pursued [by the trial court] represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 704 (1998) (citation omitted). I fail to see how the Supervising Judge, who is in an infinitely better position than this Court to assess the probability of conflict arising, abused his discretion in finding such a probability here. Notwithstanding this Court's unusual appellate jurisdiction over grand jury matters, this Court's appellate task is not to micromanage the grand jury, much less is it to second-guess the discretionary decisions of the Supervising Judge. This Court's *per curiam* order identifies no partiality, prejudice, bias, or ill will on this record. The Supervising Judge indicated an awareness of, and applied, the governing law. Nor does this Court's order explain how his decision is "manifestly unreasonable." To the contrary, the evidence is sufficient to support the trial court's finding that the likelihood of conflict here is not imaginary or unlikely. Counsel represent the corporation Voicenet, all of its high-level employees, and all of its low-level employees. Voicenet is paying all attorney fees for representation of all employees. Although Counsel

have asserted that they have not yet advised anyone to exercise Fifth Amendment rights or to seek other immunity, and have represented that all witnesses will both tell the truth and testify consistently with one another, the reality is always present that the grand jury may find that one or more of the employees, officers, or the corporation itself engaged in criminal activity, and one or all may be indicted. There are many things that may be disclosed to the grand jury that the witness would otherwise not reveal—even to counsel. And a witness may ultimately decide that he or she is no longer on the same legal footing as his or her comrades. If a witness such as Mr. Power were represented by separate counsel, that counsel could assure that he will be correctly advised as to his legal rights independent of the corporation and the other witnesses.

Further demonstrating the reasonableness of the Supervising Judge's discretionary decision is the fact that petitioners' rights are only narrowly affected, as the trial court order pertains only to the conduct of the grand jury investigation. Mr. Power is free to retain any other counsel of his choosing in the grand jury investigation if he so desires.[3] Recourse to present Counsel in any other legal matters is not restricted by the court's order. Furthermore, present Counsel are not suspended from the practice of law, formally disciplined, or precluded from representing any other clients in unrelated litigation. The degree of infringement resulting from the Supervising Judge's order is the minimum necessary to protect the Commonwealth's interest, while at the same time reducing the extent of attorney-choice harm which is sought to be prevented. As the Commonwealth's interests may reasonably be said to outweigh petitioners' interests, the Supervising Judge properly disqualified Counsel from representing Mr. Power before the investigating grand jury.

I should note that the Court's unexplained order does not preclude the District Attorney from moving to disqualify Counsel in the future, should the likelihood of conflicts become

3. Mr. Power testified that he could afford to pay his own attorney fees. N.T. 09/16/04, at 33.

even more apparent as the investigation unfolds. And so, this Court's ill-advised micromanagement of this grand jury does not seem likely to end soon.

Finally, I note that the Court's *per curiam* reversal in this case is particularly troubling because no basis for the summary action is included. This Court has made a general practice of summarily reversing only where there is directly controlling authority, and we usually cite to that authority in our *per curiam* orders. In the case *sub judice*, the reversal is supported only by a bald citation to *Pirillo v. Takiff*, 462 Pa. 511, 341 A.2d 896 (1975) and a conclusion that the Commonwealth has failed to meet its burden of proof under *Pirillo*. But a citation to *Pirillo* does not clarify the reasons for reversal, and instead, will leave the Supervising Judge to wonder where he went astray.

The burden of proof referred to in the Court's order is the test I have described above. But, in *Pirillo*, this Court affirmed a supervising judge's order disqualifying counsel. The attorney and his associate in *Pirillo* were disqualified from representing twelve policemen subpoenaed to testify before an investigating grand jury investigating official corruption, where each witness would likely be called to testify against one or more of the others. This Court reasoned that the rights asserted by the petitioners in *Pirillo*—the witnesses' right to counsel of their choosing; the attorneys' right to practice their profession; and the right to freedom of speech, assembly, and petition as guaranteed by the First and Fourteenth Amendments—are not only subject to curtailment, but were far outweighed by the interests of the state—to discover past and continuing criminal acts which seriously affect or injure the public and with which normal law enforcement is unable to cope. *Id.* at 905. In short, the unexplained citation to *Pirillo* provides no guidance whatsoever to the trial court or the District Attorney. This Court's order will only serve to prolong litigation in this matter until an "actual" conflict of interest appears as opposed to the statutory requirement of merely a likelihood of a conflict of interest. This

374

determination is best left to the sound discretion of the trial judge.

Justice EAKIN joins this dissenting statement.